SOUTH MECKLENBURG PAINTING CONTRACTORS, INC., Plaintiff v.
THE CUNNANE GROUP, INC., Defendant

No. COA98-881

(Filed 20 July 1999)

## 1. Corporations— corporate charter—revenue suspension— action on contract entered during

The trial court correctly granted summary judgment for defendant in an action for breach of a contract entered during a time when plaintiff's corporate charter was suspended under N.C.G.S. § 105-230. Although the effect of N.C.G.S. § 105-230 is not absolute, it prevents a corporation from conducting business as usual; plaintiff had no statutory right to enter into a contractual relationship with defendant and may not bring suit to enforce a contract entered into during the period of revenue suspension. Reinstatement is not relevant.

**2. Corporations— corporate charter—revenue suspension— contract entered during—dissolution statute**

The trial court correctly granted summary judgment for defendant in an action on a contract entered during a revenue suspension of the corporate charter where plaintiff argued that N.C.G.S. § 55-14-05 permits the action. That statute mandates that a corporation may not carry on any business except as appropriate to wind up and liquidate its affairs during the period of dissolution.

**3. Appeal and Error— authority not cited—contention abandoned**

A contention concerning the ability of a corporation to enter into a contract during a period in which its charter was suspended was deemed abandoned where no authority was cited.

Appeal by plaintiff from judgment entered 20 May 1998 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 March 1999.

*Wilson & Bos, by Gerard A. Bos, for plaintiff-appellant.*

*The Bishop Law Firm, P.A., by A. Todd Capitano, for defendant-appellee.*

JOHN, Judge.

Plaintiff South Mecklenburg Painting Contractors, Inc. (SMPC), appeals the trial court's grant of summary judgment in favor of defendant Cunnane Group, Inc. (Cunnane). In the main, SMPC contends the court erred in ruling that N.C.G.S. § 105-230 (1997) and N.C.G.S. § 55-14-04 (1990) barred SMPC's action against Cunnane. We affirm the trial court.

Relevant factual and procedural background includes the following: SMPC is "in the business of supplying painting labor and materials to general contractors on commercial projects." Cunnane is a general contractor operating in Charlotte, North Carolina.

On 20 May 1997, representatives of SMPC and Cunnane met to discuss a painting contract for the Bonnie Briar Townhouses (the project), whereby SMPC would "provide labor and materials" in exchange for agreed compensation. On 22 May 1997, a document was executed reflecting the parties' agreement and SMPC began purchas-

ing materials and making preparations to commence work at the project. Thereafter, SMPC became aware that another painting contractor was painting the project.

On 21 August 1997, SMPC brought the instant action alleging breach of contract and breach of quasi contract, seeking *inter alia*, "actual and consequential damages in a sum . . . exceed[ing] $10,000." Cunnane answered 27 October 1997 denying a contractual relationship with SMPC. Specifically, and as grounds for its subsequent 6 August 1998 motion for summary judgment, Cunnane asserted that because SMPC's "Articles of Incorporation were under revenue suspension" pursuant to G.S. § 105-230 at the time of the alleged contract, SMPC was without authority to conduct its normal business. SMPC's articles of incorporation had been suspended 1 October 1991 and administratively dissolved 9 March 1993 by the Secretary of State for failure to pay annual franchise fees. On 20 May 1998, the trial court granted Cunnane's motion as to all SMPC's claims and the latter timely appealed.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (1990); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). A summary judgment movant bears the burden of showing that

> (1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim.

*Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). A court ruling upon a motion for summary judgment must view all the evidence in the light most favorable to the non-movant, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor. *See Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 583, 448 S.E.2d 280, 281 (1994).

[1] SMPC first contends the trial court erred in

> its decision to grant [Cunnane's] motion for summary judgment on the sole basis that [SMPC's] corporate charter had been sus-

pended and administratively dissolved . . . for the period of time that [plaintiff's] causes of action against [defendant] accrued and [its] action . . . commenced.

We do not agree.

It is well established that when a corporate charter has been suspended for failure to pay franchise taxes, the corporation under revenue suspension "loses its state-granted privileges." *Pierce Concrete, Inc. v. Cannon Realty & Construction Co.*, 77 N.C. App. 411, 412, 335 S.E.2d 30, 31 (1985).

G.S. § 105-230 provides in pertinent part:

If a corporation . . . fails to file any report or return or to pay any tax or fee required by this Subchapter for 90 days after it is due, the Secretary shall inform the Secretary of State of this failure. The Secretary of State shall suspend the articles of incorporation . . . . *The powers, privileges, and franchises conferred upon the corporation . . . by the articles of incorporation . . . terminate upon suspension.*

Further, N.C.G.S. § 105-231 (1997) states:

A person who exercises or by any act attempts to exercise any powers, privileges, or franchises under articles of incorporation . . . after it has been suspended under G.S. § 105-230 shall pay a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) to be recovered in an action to be brought by the Secretary in the Superior Court of Wake County. *Any act performed or attempted to be performed during the period of suspension is invalid and of no effect.*

*Id.* (Emphasis added).

Although the effect of G.S. § 105-230 is not absolute, *see, e.g., Mica Industries v. Penland*, 249 N.C. 602, 606, 107 S.E.2d 120, 124 (1959), *Swimming Pool Co. v. Country Club*, 11 N.C. App. 715, 716, 182 S.E.2d 273, 274 (1971), and *Ionic Lodge v. Masons*, 232 N.C. 252, 259, 59 S.E.2d 829, 834-35, *rev'd on other grounds*, 232 N.C. 648, 62 S.E.2d 73 (1950) (corporation under revenue suspension may bring lawsuit); *see also Parker v. Homes, Inc.*, 22 N.C. App. 297, 299, 206 S.E.2d 344, 345 (1974) (approving purchase and sale of property by suspended corporation) and *Page v. Miller*, 252 N.C. 23, 26, 113 S.E.2d 52, 55 (1960) (G.S. § 105-230 not intended to deprive corporation of its property or to penalize innocent third parties), it indis-

putably prevents a corporation from "continuing to conduct [its] business as usual." *Pierce Concrete,* 77 N.C. App. at 413, 335 S.E.2d at 31.

In *Pierce Concrete,* this Court observed that the

individual defendant, to the extent he was involved, was acting in his capacity as president and agent of the corporation. His authority as agent of the corporation extended only to matters within the ordinary scope of the corporation's business. *As discussed above, the suspended corporation had no statutory right to conduct as part of its ordinary business . . . [the] transactions which [occurred subsequent to its suspension].*

*Pierce Concrete,* 77 N.C. App. at 413, 335 S.E.2d at 31 (citations omitted) (emphasis added). We then held that, in consequence of the suspension of the corporate charter, the individual defendant was liable for the indebtedness sued upon because

[t]he law will not permit a corporate officer to create obligations in the name of the corporation, knowing the acts are without authority and invalid, and then be permitted to use the corporate name as shield against the creditors.

*Id.* at 414, 335 S.E.2d at 32.

In the case *sub judice,* the ordinary business of SMPC as alleged in its complaint included "supplying painting labor and materials to general contractors on commercial projects." In addition, the parties do not dispute that SMPC's corporate charter had been suspended during the time it allegedly entered into the agreement to provide painting services to Cunnane. Accordingly, at the time of the alleged contract, SMPC had "los[t] its state-granted privileges" to conduct "[its] business as usual." *Pierce Concrete,* 77 N.C. App. at 412-13, 335 S.E.2d at 31.

Moreover, G.S. § 105-231 explicitly mandates that any "act performed or attempted to be performed" by SMPC "during [its] period of suspension is invalid and of no effect." G.S. § 105-231. Consequently, SMPC "had no statutory right . . . as part of its ordinary business," *Pierce Concrete,* 77 N.C. App. at 413, 335 S.E.2d at 31, to enter into a contractual relationship with Cunnane.

Notwithstanding, SMPC cites the holding in *Mica,* 249 N.C. 602, 107 S.E.2d 120, that "revenue suspension does not end a corporation's capacity to sue." Therefore, SMPC concludes, the circumstance of

revenue suspension would not operate to preclude its suit against Cunnane. *Mica* is distinguishable.

The corporation's suit in *Mica* was based upon transactions occurring while operation of the company was statutorily valid, *see Mica*, 249 N.C. 602, 107 S.E.2d 120 (corporation may bring action regarding transactions consummated before suspension), and a corporation may sue to enforce rights acquired prior to its suspension, *see Swimming Pool*, 11 N.C. App. at 716, 182 S.E.2d at 273-74 (corporation had legal capacity to bring suit to enforce contract entered into before suspension, notwithstanding suspension of corporation's articles of incorporation prior to commencement of suit), and *Page*, 252 N.C. at 26, 113 S.E.2d at 55 (corporation's transfer of property not invalid where judicial sale to corporation was confirmed but articles of incorporation suspended prior to corporation's assignment of its bid to judgment creditor and joining with creditor to convey the property, because G.S. § 105-230 was not intended to "deprive a corporation of its properties nor penalize innocent [third] parties").

In the instant case, however, SMPC sought to enforce contract rights allegedly acquired *during* a period of suspension. The present circumstance is thereby distinct from case-law grounded upon the rationale that suspension of a corporate charter

"while depriving the corporation of the power to engage in the ordinary business for which it has been chartered, [does not] take[] away . . . the incidental powers necessary to [the corporation's] survival [*i.e.*,] the power to protect its property in a court of law, either by assertion or defense of right."

*Swimming Pool*, 11 N.C. App. at 716, 182 S.E.2d at 274 (citation omitted); *see also Mica*, 249 N.C. at 606, 107 S.E.2d at 124; *Ionic Lodge*, 232 N.C. at 259, 59 S.E.2d at 834 (corporation may defend action brought against it during period of suspension); *Trust Co. v. School for Boys*, 229 N.C. 738, 743, 51 S.E.2d 477, 480 (1949) (corporation may take property under a will during suspension). Although our courts have not specifically addressed the issue *sub judice* prior to the instant appeal, our reading of G.S. § 105-230 and G.S. § 105-231, as well as of the case-law cited above, compels the conclusion that a corporation may not bring suit to enforce a contract entered into during a period of revenue suspension.

SOUTH MECKLENBURG PAINTING CONTR'RS v. CUNNANE GRP.

[134 N.C. App. 307 (1999)]

SMPC vigorously points to the reinstatement of its articles during the pendency of this action.[1] We respectfully respond that such reinstatement is not relevant to our inquiry. Rather we conclude the statute and case law direct our focus to the circumstance that SMPC's suit against Cunnane was instituted to enforce a contract allegedly entered into while SMPC's articles of incorporation were suspended. We reiterate that once suspended, a corporation simply may not "conduct . . . business as usual," *Pierce Concrete*, 77 N.C. App. at 413, 335 S.E.2d at 31, and "[a]ny act performed or attempted to be performed during [a] period of suspension is invalid and of no effect." G.S. § 105-231.

[2] SMPC also argues that portions of the Business Corporation Act, N.C.G.S. §§ 55-1-01 through 55-17-05 (1997), permit the instant action. SMPC specifically points to G.S. § 55-14-05 which provides in pertinent part:

**Effect of dissolution**

(a) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

   (1) Collecting its assets;

   (2) Disposing of its properties that will not be distributed in kind to its shareholders;

   (3) Discharging or making provision for discharging its liabilities;

   (4) Distributing its remaining property among its shareholders according to their interests; and

   (5) Doing every other act necessary to wind up and liquidate its business and affairs.

(b) Dissolution of a corporation does not:

   (1) Transfer title to the corporation's property;

---

1. Plaintiff does not contend on appeal that reinstatement of SMPC's charter related back to the date of its 9 March 1993 administrative dissolution so as to allow SMPC to enter into the alleged contract on 20 May 1997. We therefore do not address this argument save to note SMPC did not seek reinstatement of its charter within two years of dissolution thereof as required by N.C.G.S. § 55-14-22 (1997) (corporation administratively dissolved may apply for reinstatement within two years after effective date of dissolution and, if allowed, reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution").

(2) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;

(3) Subject its directors or officers to standards of conduct different from those prescribed in Article 8;

(4) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;

(5) Prevent commencement of a proceeding by or against the corporation in its corporate name;

(6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or

(7) Terminate the authority of the registered agent of the corporation.

G.S. § 55-14-05.

We do not quarrel with SMPC's assertion that G.S. § 55-14-05 allows a corporation to "commence[] . . . a proceeding by . . . the corporation in its corporate name." *Id.* However, the statute also mandates that a corporation "may not carry on any business except that appropriate to wind up and liquidate its business and affairs" during the period of dissolution. *Id.* As SMPC's articles of incorporation were dissolved 9 March 1993, there remains no legal basis upon which to validate the alleged 22 May 1997 contract with Cunnane occurring during the period of SMPC's suspension and dissolution so as to permit suit upon the alleged contract. SMPC's reliance upon the Business Corporation Act is unavailing.

**[3]** Finally, SMPC contends the trial court committed reversible error in that there was no "evidence of [SMPC's] actual intent or knowledge concerning the suspension or administrative dissolution [of its charter] in the record." However, plaintiff cites no authority in support of this contention and it is deemed abandoned. *See* N.C.R. App. P. 28(b)(5) ("assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned").

In sum, SMPC had no statutory authority to enter into a contractual relationship with Cunnane while the former's corporate charter was in a state of administrative suspension and dissolution. *See* G.S.

§ 105-231 ("[a]ny act performed or attempted to be performed during [a] period of suspension is invalid and of no effect"). Accordingly, there existed no basis upon which to allow SMPC to seek enforcement of the alleged contract, and the trial court did not err in granting summary judgment in favor of Cunnane.

Affirmed.

Judges WALKER and McGEE concur.